**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | No. 07-36031 |
| Plaintiff - Interpleader, | D.C. No. CV-05-03104-FVS |
| v. | MEMORANDUM[*] |
| ROXANN CLINE, a single woman, | |
| Defendant - Appellant, | |
| TERESA E. VALENTINE, individually and as guardian form BRC, JWC and BMC minor children, | |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Eastern District of Washington
Fred L. Van Sickle, District Judge, Presiding

Argued and Submitted February 5, 2009
Submission Vacated February 9, 2009
Resubmitted July 16, 2010
Seattle, Washington

Before: B. FLETCHER, RYMER, and FISHER, Circuit Judges.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Roxann Cline appeals the district court's grant of summary judgment on claims related to the disbursement of funds from her late husband's life insurance and 401(k) plans. We have jurisdiction under 28 U.S.C. § 1291 and we affirm in part and reverse in part.

In 2004, Roxann Cline's husband, Raymond Cline, died. Mr. Cline previously had been married to Teresa Valentine, with whom Mr. Cline had four children. Through his former employer, Mr. Cline participated in two benefit plans governed by the Employee Retirement Income Security Act (ERISA), a Group Universal Life Insurance Plan administered by the Metropolitan Life Insurance Company (MetLife) and a 401(k) retirement plan. The life insurance plan initially provided for $432,000 in benefits in the event of Mr. Cline's death, $218,000 in spousal life insurance, and $10,000 of coverage for his children. The plan documents designated Ms. Valentine as "[e]ntitled to 100% of benefits or $432,000.00."

Ms. Valentine and Mr. Cline divorced in 2002. The divorce decree provided that Ms. Valentine would receive the benefits from "[a]ll Insurance Policies upon husband's life" and that she would retain half of the value of the 401(k) plan in her husband's name. A year later, Mr. Cline married Ms. Cline, the appellant here.

Despite the provision in the divorce decree, Mr. Cline designated Ms. Cline the beneficiary of the 401(k) plan.

At the time of Mr. Cline's death, the total benefits payable under his life insurance plan were $660,016.19, an increase from the original $432,000. MetLife, as administrator of the plan, distributed $432,000 to Ms. Valentine. But MetLife was unable to determine to whom the remainder of the benefits should be paid and initiated this action in federal court. Fidelity Employer Services Co. LLC handled the disbursement of the 401(k) plan proceeds on behalf of the plan administrator. Fidelity rejected Ms. Valentine's claim to the money and all of the funds were distributed to Ms. Cline.

On summary judgment, the district court ruled that Ms. Valentine was entitled to 100 percent of the life insurance proceeds. The district court also imposed a constructive trust on the 401(k) funds that Ms. Cline had received to provide for Ms. Valentine to receive 50 percent of the funds. In so doing, the district court determined that ERISA did not preempt the imposition of a constructive trust on the 401(k) disbursements.

We review de novo the district court's grant of summary judgment. *See Golden Gate Rest. Ass'n v. City & County of San Francisco*, 546 F.3d 639, 643 (9th Cir. 2008). We also review de novo whether ERISA preempts state law. *Id.*

ERISA requires that a plan fiduciary administer an ERISA plan for the purpose of "providing benefits to participants and their beneficiaries" and "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(A)(I), (a)(1)(D); *see also id.* § 1002(8) (defining a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan"). An exception exists where a qualified domestic relations order (QDRO) specifies a beneficiary different from what is in the plan documents. *See id.* § 1056(d)(3)(A); *Hamilton v. Wash. State Plumbing & Pipefitting Indus. Pension Plan*, 433 F.3d 1091, 1096 (9th Cir. 2006). Otherwise, ERISA preempts "any and all State laws insofar as they . . . relate to any employee benefit plan" governed by ERISA. 29 U.S.C. § 1144(a).

Here, the district court correctly concluded that Ms. Valentine was entitled to 100 percent of the life insurance proceeds. Courts interpret ERISA plan documents using traditional contract principles. *See Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997). The plain language of the plan designated Ms. Valentine as "[e]ntitled to 100% of benefits or $432,000.00." Mr. Cline never changed the designation of Ms. Valentine as the beneficiary. And, contrary to Ms. Cline's arguments, the designation of Ms. Valentine as the beneficiary is not ambiguous. At the time Mr. Cline made the

designation, $432,000 equaled 100 percent of the value of the life insurance policy. The fact that the value grew in subsequent years does not render the "100%" designation ambiguous. Even if we did find the provision ambiguous in isolation, Mr. Cline clearly intended for his then-wife, Ms. Valentine, to receive 100 percent of the benefits at the time he designated her as the beneficiary. *See Kemmis v. McGoldrick*, 767 F.2d 594, 597 (9th Cir. 1985) ("If a provision is ambiguous . . . its interpretation depends on the parties' intent at the time of execution."). Mr. Cline never changed the designation from Ms. Valentine. Therefore, we affirm the district court's grant of summary judgment in favor of Ms. Valentine with regard to the distribution of the life insurance proceeds.

We cannot agree, however, with the district court's interpretation of the scope of ERISA preemption in the circumstances we face here. A domestic relations order, such as the divorce decree, can only reassign ERISA benefits if it is a QDRO. The order must "clearly specif[y]" (1) the name and mailing address of both the participant and the alternate payees, (2) the amount or percentage of the participant's benefits to be paid to each alternate payee, (3) the number of payments to which the order applies, and (4) the plan to which the order applies. 29 U.S.C. § 1056(d)(3)(C). Ms. Valentine claimed entitlement to 50 percent of the

value of Mr. Cline's 401(k) under the divorce decree. The divorce decree, however, does not meet the requirements of a QDRO.

The plan documents name Ms. Cline as the beneficiary. While certain circumstances allow for the imposition of a constructive trust over the proceeds from a pension plan, those circumstances are not present here. The imposition of a constructive trust simply cannot be used to circumvent ERISA preemption except in the limited circumstances where a valid QDRO exists. Congress did not intend to permit reassignment of a surviving spouse's benefits. *Carmona v. Carmona*, 603 F.3d 1041, 1062 (9th Cir. 2010). The creation of a constructive trust would do just that and, accordingly, is preempted. *See id.* We therefore reverse the district court's grant of summary judgment and remand this case to the district court for further proceedings consistent with this decision.

Each party shall bear its own costs on appeal.

**AFFIRMED in part; REVERSED in part.**